Nov. Term,
1860.

KING
v.
THE STATE.

KING and Others *v.* THE STATE on the Relation of HUBBLE and Others.

Notice to take depositions at a certain time and place, and between hours named, and "that the taking of the same would be continued, from day to day, by adjournment, until all were taken." The taking of the testimony was begun on the day named, and adjourned, without assigning any reason therefor, until the next day, when, the witness desired not being present, the further taking was, without taking any testimony, adjourned until the day following.

*Held,* on motion to suppress, that there is no rule of practice requiring the officer taking depositions, to note the reason of an adjournment.

*Held,* also, that, the adjournment on a day on which no testimony was taken, was authorized by the notice, and was manifestly proper, the witness desired being unavoidably absent, but expected the next day.

*Held,* also, that as the adjournment did not appear to have operated to the prejudice of the other party, the motion to suppress ought, under § 272 of the code, for that reason alone, to have been overruled.

Suit against a justice of the peace and his sureties, on his official bond, for failure to pay over money collected. The bond was conditioned for the payment, to the person entitled thereto, of all moneys which should come into his hands, as such justice, during his continuance in office. The justice was defaulted: the sureties answered, and on the trial offered to prove, by their principal, that the claim for which suit was brought was not left with him in his official character, but merely as an agent.

*Held,* that, as this was a joint suit, upon a joint and several bond, and the testimony proposed tended to prove that there was no cause of action against the defendants, or either of them, it was matter in which they were all interested, and could not therefore be proved by a co-defendant.

*Held,* also, that under 2 R. S. 1852, p. 97, § 302, a co-defendant may be called as a witness, but can not be examined touching any matter in which he is alike interested with the other defendants.

*Held,* also, that the fact that the co-defendant had been defaulted, could not vary the case; because, if there was no breach of the contract (the bond), there could be no cause of action, and so no recovery, even on a default.

*Held,* also, that in order to a recovery, it was incumbent on the relators to prove that the money sued for had been collected by the justice "during his continuance in office."

Tuesday,
November 27.

APPEAL from the *Wayne* Circuit Court.

DAVISON J.—This was an action commenced on *May* 28, 1857, against *John F. King,* a justice of the peace, and his sureties, *Oliver Morton, Isaac Lamb,* and *Alfred Lashly,*

upon his official bond. The bond is dated *Nov.* 25, 1852, and is conditioned in the usual form, for the faithful discharge of the duties of the justice, and for the payment over, by him, on demand, to the person entitled to receive the same, of all moneys which should come into his hands, as such justice, *during his continuance in office.* In the complaint, it is averred, that on *October* 18, 1856, the relators placed in the hands of said justice, a claim in their favor and against *Hays & Banta*, for $89 and 60 cents, which he has collected ; but has refused, upon demand, to pay over, &c. *King* was defaulted ; the sureties answered the complaint. Issues upon their answer having been made, the cause was submitted to the Court, who found for the plaintiff. Motion for a new trial denied, and judgment on the finding. There is a bill of exceptions, which shows that the relators notified the defendants that they would, " on *September* 2, 1857, between the hours of 9 A. M., and 4 P. M., at their store room on *Pearl Street, Cincinnati, Ohio*, take the depositions of sundry persons, and continue such taking from day to day, by adjournment, until all were taken." On *September* 2, the day named in the notice, the deposition of *Allen Hinchman* was taken at the place designated, before a notary public ; when, at the instance of the plaintiff, the further taking was adjourned until the next day at two o'clock. On *September* 3, the day to which the adjournment was made, the relators appeared before the notary, and it appearing that the witness they expected to examine on that day, was unavoidably detained and could not be present, the hearing of testimony was further adjourned until the next day, *September* 4, when the deposition of one *William R. Hubble*, was taken at the place described in the notice. The defendants were not present on any of the above named days.

At the proper time, the defendants moved to suppress the deposition of *William R. Hubble*, on two grounds. 1. Because, for the adjournment from the second to the third of *September*, no reason is given. 2. No deposition was taken on the third, and, therefore, an adjournment to the fourth was unauthorized by the notice. There seems to be nothing in these

objections. The notice authorized the adjournments, and we know of no rule of practice that required the reasons for making them to be noted by the officer before whom the depositions were taken. Nor did the adjournment, on a day on which no deposition was taken at all, conflict with the requirements of the notice. Indeed, it is manifestly proper that a party should have the right so to adjourn, when the witness intended to be examined is then unavoidably absent; but expected to attend on the next day. But these adjournments do not appear to have operated in any degree, to the prejudice of the rights of the defendants, and for that reason alone, the motion was properly refused. 2 R. S., p. 90, § 272.

During the trial, the defendants, *Morton*, *Lashley* and *Lamb*, the sureties in the bond, produced *John F. King*, their principal, who had been defaulted, and by him, offered to prove, " That when the claim was left with him, it was not to be sued on, or official steps taken for its collection; that *Hays & Banta*, who owed the claim, had left in his hands divers claims to be collected, and there was a verbal arrangement between them and the relators, that when he, *King*, collected money on *Hays & Banta's* claims, he might apply it to the relators' claim, and that nothing applicable to their claim, ever came into his hands." To the proof of these facts, by the proposed witness, an objection was sustained, and the defendants excepted. It is conceded that *King*, being a co-defendant, would have been incompetent under the old system of procedure; but insisted that the rules of practice now in force, authorized his examination as to the facts stated. The code says : " A party may be examined on behalf of his co-plaintiff, or co-defendant, as to any matter in which he is not jointly interested, or liable with such co-plaintiff or co-defendant, and as to which a separate and not a joint judgment shall be rendered." 2 R. S., p. 97, § 302. This, as has been seen, was a joint suit, upon a joint and several bond, and if the matter proposed as evidence, tended to prove that there was no cause of action against the defendants, or either of them, it was, evidently, matter in which they were all interested, and could not, therefore, be proved by a co-defendant. He may, it is true, be called as a witness, but can not be examined touching

any matter in which he is alike interested with the other defendants. *Beal* v. *Finch*, 1 Kern. 135.—*Wood* v. *Cohen*, 6 Ind. 455.—*Ferry* v. *Parks*, 11 Ind. 165. This construction, at once shows that *King* could not be allowed to give the proposed evidence, because it tended to prove that the claim, in suit, was left with him, not as a justice of the peace, but as a mere agent, under an arrangement between the relators and their debtors. Such being the case, his failure to pay over on demand would not have constituted a breach of the contract sued on, and the suit would of course, have resulted in a joint judgment in favor of all the defendants. The fact that *King* had been defaulted could not vary the case, because, if there was no breach of the contract, there could be no cause of action; and that being the case made by the evidence, the plaintiff could not have recovered. *Kincaid* v. *Purcell*, 1 Ind. 324. The testimony was not, in our judgment, admissible.

The next inquiry relates to the evidence given on the trial. It was proved that *King's* term of office commenced in *November*, 1852, and expired in *November*, 1856; that on *October* 18, 1856, he gave the relators a receipt in these words; " Received of *Hubble, Alexander & Driver*, for collection, an account on *Hays & Banta*, for $89 and 60 cents." (Signed) " *John F. King* ;" and that the account described in the receipt was left with him " to collect as a justice of the peace." But the only evidence tending to prove that he had collected the account, is found in the testimony of one *Jacob B. Julian*, who testified as follows : " Three or four weeks before suit was brought, the above receipt was sent to me, and I called on *King*, who said he had collected the money on the claim, and would pay it over in a few days; but he failed to do so, and I brought suit." As we have seen, this suit was commenced *May* 28, 1857. The appellants contend, that the evidence is insufficient, because it fails to prove that *King* received the money before his term of office expired. This position seems to be correct. In view of the condition of the bond, it was incumbent on the plaintiff to prove, affirmatively, that the money, alleged to have been collected by the justice, was in his hands " during his continuance in office." Otherwise, the

sureties can not be held liable. There are, indeed, authorities to the effect that admissions of the principal are not evidence against the sureties, unless they were made while he was acting officially in reference to the subject matter of the admissions. *Hotchkiss* v. *Lyons*, 2 Blackf. 222.—*Shelby* v. *The Governor*, *Id.* 289. The appellees rely on *Parker* v. *The State*, 8 Blackf. 292. But that case does not, in our judgment, favor the ruling of the Circuit Court. There the suit was against *Parker*, who had been a justice, and his sureties, for failing to pay over the money collected by him, while in office. Upon the trial, his letters were produced, in which he admitted that he had collected the money prior to the expiration of his term, and there was evidence tending to prove that the letters were written while he was a justice of the peace. The Court held that these letters were evidence against the sureties, and further, that the demand required to be made on a justice, for money collected, may be made at any time before the commencement of the suit. This decision is not in conflict with the principle above stated. The letters proved that *Parker* received the money while in office as justice of the peace, and the evidence sufficiently showed that they were written before his term expired. But in the present case, the admissions were made at least four months after *King* had ceased to hold the office, and simply show that he had collected the claim; without any reference whatever, to the time it was collected. We are of opinion that the finding of the court is unsustained by the evidence, and that a new trial should have been granted.

*Per Curiam.*—The judgment is reversed, with costs. Cause remanded, &c.

*Newman*, *Siddall*, *Morton* and *Johnson*, for appellants.

*Jacob B. Julian*, for appellees.